**Marshall Meyers (020584)**
**WEISBERG & MEYERS, LLC**
**5025 North Central Ave., #602**
**Phoenix, AZ 85012**
**602 445 9819**
**866 565 1327 facsimile**
**mmeyers@AttorneysForConsumers.com**
**Attorney for Plaintiff**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ryan Pearson, | ) Case No. 2:10-cv-00526-MHM |
| Plaintiff, | ) **PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS.** |
| vs. | ) |
| National Credit Systems, Inc., | ) |
| Defendant. | ) |

### I.   INTRODUCTION.

Plaintiff, Ryan Pearson, did not initiate any business with Defendant, National Credit Systems, Inc. ("Defendant").  Rather, Defendant obtained Plaintiff's information from a third party creditor to Plaintiff, and for its own profit, began communicating with Plaintiff in an effort to collect an alleged debt.  Defendant's contacts and communications violated Plaintiff's federal Fair Debt Collection Practices Act rights, and as such, Plaintiff retained Weisberg & Meyers, LLC to protect his consumer rights.

On March 8, 2010, shortly after Plaintiff failed in his efforts to resolve any outstanding dispute with Defendant prior to litigation, Plaintiff filed his original

Complaint against Defendant alleging, in part, violations of the federal Fair Debt Collection Practices Act. On April 8, 2010, Defendant filed its original Answer. On June 21, 2010, Plaintiff reached out to Defendant to attempt to resolve the underlying issues and settle both the initial claim and the attorneys' fees issue. Defendant rejected Plaintiff's settlement offer, and submitted its Defendant's Offer of Judgment on July 2, 2010. On July 2, 2010, Plaintiff submitted Plaintiff's Notice of Acceptance of Defendant's Offer of Judgment.

On July 7, 2010, Final Judgment was entered in favor of Plaintiff. However, per the terms of the Final Judgment, Plaintiff is the prevailing party, and the remaining issue is the recovery of attorney's fees and costs by the Plaintiff, under the Order of Final Judgment as well as the fee-shifting provision included in the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692k.

## II.  PROCEDURAL HISTORY.

On March 8, 2010, shortly after Plaintiff failed in his efforts to resolve any outstanding dispute with Defendant prior to litigation, Plaintiff filed his original Complaint against Defendant alleging, in part, violations of the federal Fair Debt Collection Practices Act. (Document 1). Defendant was served on March 17, 2010, and its answer was due by April 8, 2010. (Document 5). On April 8, 2010, Defendant filed its original Answer. (Document 6). On May 21, 2010, an Order Setting Scheduling Conference was entered by Hon. Mary H. Murguia. (Document 8). On July 2, 2010, Defendant submitted its Defendant's Offer of Judgment. (Document 13-1). On July 2, 2010, Plaintiff submitted Plaintiff's Notice of Acceptance of Defendant's Offer of

Judgment. (Document 13). On July 7, 2010, Final Judgment was entered. (Document 14).

## III. SETTLEMENT HISTORY.

Plaintiff's counsel first contacted Defendant on January 7, 2010, by written correspondence, to advise Defendant of his representation and of his claims. (*See* Correspondence dated January 7, 2010, attached hereto as Exhibit "A"). The letter contained an offer for settlement, reading in part:

> [W]e are willing today to settle this matter for $3,500.00, inclusive of fees and costs plus your company's, and its assigns', agreement to cease all collection activities with our client, and remove, correct or prevent any and all trade-line information that appears, had appeared or may appear on any of my client's credit reports. This demand is inclusive of all statutory and actual damages both in the form of emotional distress, economic loss, damage to credit, and attorneys' fees and costs.

(*See* Exhibit "A," at 2). Defendant did not respond to Plaintiff's letter. Plaintiff sent a follow up letter attempting to settle on January 29, 2010. (*See* Correspondence dated January 29, 2010, attached hereto as Exhibit "B"). Again, Defendant did not respond to Plaintiff's letter dated January 29, 2010. Plaintiff sent Defendant an E-mail on May 16, 2010, offering a settlement in the amount of $3,500.00. (*See* Electronic Correspondence dated May 16, 2010, attached hereto as Exhibit "C"). Defendant responded via E-mail on June 10, 2010, rejecting Plaintiff's settlement offer, and proposing its own settlement offer. (*See* Electronic Correspondence dated June 10, 2010, attached hereto as Exhibit "D"). Plaintiff rejected Defendant's settlement offer in an E-mail dated June 21, 2010,

and offered to settle the matter for $4,500.00.  (*See* Electronic Correspondence dated June 21, 2010, attached hereto as Exhibit "E").

On July 2, 2010, Defendant submitted Defendant's Offer of Judgment pursuant to Fed. R. Civ. P. 68 in the amount of "One Thousand One Dollars ($1,00l.00)" as well as "Plaintiffs costs and reasonable attorneys' fees now accrued."  (Document 13-1).  On July 2, 2010, Plaintiff submitted Plaintiff's Notice of Acceptance of Defendant's Offer of Judgment.  (Document 13).

The parties have been unable to come to an agreement on attorneys' fees and costs.[1]  Therefore, Plaintiff now presents his Petition for Attorneys' Fees and Costs, detailing the time spent by his counsel and the clear fee-shifting mandate of the FDCPA.

### **MEMORANDUM OF POINTS AND AUTHORITIES**

**IV.    THE PLAIN LANGUAGE OF THE FDCPA <u>MANDATES</u> THAT PLAINTIFF IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND COSTS.**

15 U.S.C. §1692k(a) provides in pertinent part:

> [A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person **is liable** to such person in an amount equal to the sum of—
>
> \*     \*     \*
>
> **(3)** in the case of any successful action to enforce the foregoing liability, **the costs of the action, together with a reasonable attorney's fee as determined by the court**.

15 U.S.C. §1692k (a) (emphasis added).

---

[1] A Statement of Consultation by Plaintiff's attorney Marshall Meyers is attached hereto and filed concurrently herewith as Exhibit "F."

Plaintiff's Petition for Attorney's Fees and Costs - 4

"Given the structure of [15 U.S.C. §1692k], attorney's fees should not be construed as a special or discretionary remedy; rather, the Act mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general." *Graziano v. Harrison*, 950 F. 2d 107, 113 (3d. Cir. 1991) (reiterating that several courts have required an award of attorney's fees even where violations were so minimal that statutory damages were not warranted); *see also French v. Corporate Receivables, Inc.,* 489 F. 3d 402 (1st Cir. 2007) (finding that an award of attorney's fees to successful plaintiffs under the FDCPA is obligatory); *Miller v. Midpoint Resolution Group, LLC,* 608 F. Supp. 2d 389 (W.D. N.Y. 2009) (holding that once a violation of the FDCPA is found, an award of attorney's fees and costs is mandatory); *Teng v. Metropolitan Retail Recovery*, 851 F. Supp 61, (E.D. N.Y., 1994) (noting that the structure of the fee shifting provision included in the FDCPA mandates attorney's fees as the means of fulfilling congressional intent that the act be enforced by private attorneys general).

Discussing the mandatory nature of the fees shifting provision included in the FDCPA, the Ninth Circuit detailed that "[t]he reason for mandatory fees is that congress chose a 'private attorney general' approach to assume enforcement of the FDCPA.." *Camacho v. Bridgeport Financial, Inc.*, 523 F. 3d 973, 978 (9th Cir. 2008); *see also Tolentino v. Friedman*, 46 F. 3d 645, 651-652 (7th Cir. 1995); *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir 1991). The Seventh Circuit, in similar fashion, explained that the public as a whole has an interest in the vindication of statutory rights, and Congress' specific intent under the FDCPA was to facilitate an individual plaintiff's ability to

pursue an action where the economic burden of costs and fees would otherwise preclude enforcement. *Tolentino*, 46 F. 3d at 652. Quoting the United States Supreme Court, the Seventh Circuit additionally made clear: "Unlike most private tort litigants, a plaintiff who brings an FDCPA action seeks to vindicate important rights that cannot be valued solely in monetary terms." *Id*.

## V. PUBLIC POLICY SUPPORTS AN AWARD OF ATTORNEYS' FEES AND COSTS TO PLAINTIFF.

The FDCPA was enacted to eliminate abusive debt collection practices by debt collectors, to insure those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses. 15 U.S.C. §1692. Congress in fact announced in enacting the FDCPA: "There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Id*. The fee shifting provision included in the FDCPA enables consumers to vindicate their personal rights while benefitting society in general, resulting in greater deterrence of fraudulent and deceptive business practices. *See Russell v. Equifax A.R.S.*, 74 F. 3d 30, 33 (2d Cir. 1996); *Foti v. NCO Financial Systems, Inc.*, 424 F. Supp. 2d 643, 653 (S.D. N.Y. 2006).

Difficulty in enforcing statutes like the FDCPA, and its state law counterparts, by private attorneys general arises in part because, unlike personal injury actions, at the commencement of litigation the potential for recovery is not clear. *Bowers v.*

*Transamerica Title Insurance Company*, 675 P.2d 193, 204 (Wash. 1983). What's more, the amount in controversy is usually too small to induce an attorney to commence litigation on a percentage contingency. *Id*. As well, litigation costs are an expense of doing business for corporations, whereas the average consumer doesn't have the economic staying power to engage in protracted litigation, thereby providing larger companies a unique advantage over consumers. *Chrysler Corporation v. Maiocco*, 209 Conn. 579, 552 A.2d 1207 (Conn. 1989).

Accordingly, "the purpose of the statutory fee award is to benefit the plaintiff by allowing the plaintiff to obtain counsel in order to pursue redress for relatively small claims." *Majcher v. Laurel Motors, Inc*., 287 Ill. App. 3d 719, 732 (Ill. Ct. App. 1997); *see also Grove v. Huffman*, 262 Ill. App.3d 531, 539 (Ill. Ct. Ap. 1994) ("To hold otherwise would discourage injured parties from seeking relief…and would be counterproductive to the [congressional] purpose…"). By providing the private bar with incentive to involve itself in consumer litigation through fee-shifting, the government is relieved of the costs of protecting consumers while insuring that consumers may still avail themselves of their statutory rights.

Lacking a sufficient award of attorneys' fees and costs, an entry of judgment for the consumer would not make the consumer whole, as the average consumer would be unable to pay his attorney's fees, creating a deterrent for private attorneys to pursue this type of action. Fee shifting provisions are put in place to remove the difficulty of obtaining counsel in pursuing claims which are relatively small compared to potential legal costs. *Id*. at 539.

Plaintiff's Petition for Attorney's Fees and Costs - 7

**VI.  AN AWARD OF ATTORNEYS' FEES AND COSTS UNDER THE FDCPA IS TO BE BASED UPON ACTUAL TIME EXPENDED, AND NOT THE AMOUNT OF RECOVERY.**

Enforcement of a plaintiff's rights under the FDCPA through the courts is prohibitively expensive.  Awarding fees based upon actual time expended, rather than amount of recovery, makes economically feasible the pursuit of remedies by consumers in state and federal courts.[2]  There exists a strong presumption that the lodestar amount represents an adequate and proper fee award.  *Hensley v. Eckhart*, 461 U.S. 424, 533 (1983); *see also City of Riverside v. Rivera,* 477 U.S. 561, 576, (1986) ("[R]easonable

---

[2] Analogous federal consumer protection statutes have likewise been interpreted in such manner.  *See* S.Rep. 93-151 at 24 (stating "[i]t should be noted that an attorneys' fee is to be based on actual time expended rather than being tied to any percentage of the recovery").  Courts analyzing the fee shifting provision included in the federal Magnuson-Moss Warranty Act have noted: "In consumer protection as this, the monetary value of the case is typically low.  If courts focus only on the dollar value and the result of the case when awarding attorney fees, the remedial purposes of the statutes in question will be thwarted.  Simply put, if attorney fee awards in these cases do not provide a reasonable return, it will be economically impossible for attorneys to represent their clients.  Thus, practically speaking, the door to the courtroom will be closed to all but those with either potentially substantial damages, or those with sufficient economic resources to afford the litigation expenses involved.  Such a situation would indeed be ironic: it is but precisely those with ordinary consumer complaints and those who cannot afford their attorney fees for whom these remedial acts are intended."  *Jordan v Transnational Motors, Inc.*, 537 N.W.2d 471 (Mich. 1995); *Rice v Mike Ferrell Ford, Inc.*, 403 S.E. 2d 73 (W. Va. 1987); *see also Bobby Jones v. Fleetwood Motor Homes*, 127 F. Supp.2d 958, 967 (N.D. Ill. 2000) (declining to reduce the consumer's award of attorneys' fees simply because the consumer recovered only $5,000 on a $92,000 motor home or only five (5) percent of the amounts sought: "As previously indicated, the statute provides that fee awards are to be based on time actually expended and legislative history supports that the fee award is not to be tied to a percentage of the recovery.  Therefore, as long as the time expended was reasonable, it would be inappropriate to reduce the fee award because it might be considered disproportionate to the $5,000.00 in damages that that plaintiff actually recovered.").

Plaintiff's Petition for Attorney's Fees and Costs - 8

attorney's fees ... are not conditioned upon and need not be proportionate to an award of money damages.").

Also significant, particular to the lodestar calculation, the hourly rate for each advocate is to be based on the prevailing rate in the community for that individual's level of legal skill and experience. *Blum v. Stenson*, 465 U.S. 886 (1984). The Seventh Circuit observed, with explicit reference to the FDCPA:

> In order to encourage able counsel to undertake FDCPA cases, as congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases. As we noted in *Gusman v. Unisys Corp.,* 986 F.2d 1146, 1150 (7th Cir.1993), "Our recent cases have stressed that the best measure of the cost of an attorney's time is what that attorney could earn from paying clients. For a busy attorney, this is the standard hourly rate. If he were not representing this plaintiff in this case, the lawyer could sell the same time to someone else. That other person's willingness to pay establishes the market's valuation of the attorney's services."

*Tolentino*, 46 F. 3d at 652.

The Third Circuit similarly stated:

> Congress provided fee shifting to enhance enforcement of important civil rights, consumer-protection, and environmental policies. By providing competitive rates we assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated.

*Student Public Interest Research Group v. AT & T Bell Laboratories,* 842 F.2d 1436, 1449 (3d Cir.1988).

In most cases filed pursuant to the FDCPA an award of attorneys' fees to a prevailing party greatly exceeds the damage award. *See Cope v. Duggins*, 203 F. Supp

Plaintiff's Petition for Attorney's Fees and Costs - 9

2d 650 (E.D. La. 2002); *Silva v. National Telewire Corp.*, 2001 U.S. Dist. LEXIS 20717 (D. N.H. 2001) (awarding attorneys' fees in the amount of $59,288.50 and costs and expenses in the amount of $5,338.45).

## VII. THE RATES SOUGHT BY PLAINTIFF'S ATTORNEYS ARE REASONABLE AND COMMENSURATE WITH THEIR EXPERIENCE IN THE FIELD OF CONSUMER PROTECTION.

A reasonable fee is judged against the prevailing market rate for attorneys of comparable experience employed in cases of similar complexity. Plaintiff seeks an award of attorneys' fees in the amount of $4,694.50, for a total of 27.7 hours of attorney, law clerk, paralegal, and legal assistant time at hourly rates ranging from $80.00 per hour to $265.00 per hour.[3] (*See* Statement of Services, attached hereto as Exhibit "G"). Specifically, Plaintiff seeks to recover attorneys' fees for Marshall Meyers at a rate of $265.00 per hour for 8.1 hours, Dennis Kurz at a rate of $250 an hour for 0.4 hours, and Joshua Trigsted at a rate of $175.00 per hour for 2.0 hours; law clerk fees for Cody Huffaker at a rate of $100.00 per hour for 9.3 hours; paralegal fees for Kimberly Larson, Tremain Davis, and Jessica DeCandia at a rate of $120.00 per hour for 7.4 hours; and legal assistant fees for Steve Perez at a rate of $80.00 per hour for 0.5 hours.

The hourly rates of Plaintiff's attorneys, law clerks, paralegals, and legal assistants, delineated in Plaintiff's Statement of Services, are commensurate with the experience and training of each employee at Weisberg & Meyers, LLC. These rates are also supported by the 2007 Consumer Law Attorney Fee Survey, the U.S. Attorney's

---

[3] Plaintiff's attorneys' rates increased at the beginning of 2010. However, Plaintiff's attorneys seek fees according to their 2009 rates in this case.

"Laffey Matrix," as well as the affidavits of other consumer advocates. Numerous recent FDCPA cases have also approved rates of at least $300.00 per hour for experienced attorneys who were experts in the field of consumer protection law. *See e.g. Dowling v. Litton Loan Servicing, LP*, 320 Fed. Appx. 442 (6th Cir. 2009) ($300 hourly rate fell within range of reasonableness for litigators of counsel's skill level and experience in that community), *Larsen v. JBC Legal Group, P.C.* 588 F. Supp 2d 360 (E.D. N.Y. 2008) as amended, (Dec. 18, 2008) (hourly rate of $300 was reasonable where attorney had practiced law for 17 years, focused on consumer law for 7 years, and had significant experience in consumer protection litigation), *Cope v. Duggins*, 203 F. Supp. 2d 650 (E.D. La. 2002) (the reasonable hourly rate for attorneys fees under the FDCPA is the prevailing market rate for attorneys of comparable experience in cases of similar complexity). In fact, according to the Seventh Circuit, paying counsel in an FDCPA case at rates *lower* than those that they could obtain in the marketplace is *inconsistent* with the congressional desire to enforce the FDCPA through private actions. *Tolentino v. Friedman*, 46 F. 3d 645 (7th Cir. 1995).[4]

---

[4] An Arizona District Court has specifically found Plaintiff's attorneys rates to be reasonable. In *Savage v. NIC, Inc.*, the court considered the rates of the very same attorneys, and held "Plaintiff's request for $17,442.30 (61.5 hours at a rate of approximately $272 per hour and $675.20 for court costs) to be reasonable.." (*See Savage v. NIC, Inc.*, 2010 WL 2347028 (D. Ariz. 2010), Exhibit "L"). The Northern District of Texas also considered Plaintiff's attorneys' rates in *Brown v. Phoenix Recovery Group*, and held: "Given their respective levels of experience, and the rates prevalent in the area in which Brown filed her suit, the fees charged by the three attorneys and two paralegals are not unreasonable. Such an award is also commensurate with the length and complexity of this case."(See Order in *Brown v. Phoenix Recovery Group*, No. 3:09-CV-1319-D, Exhibit "L").

**A.   The Experience Of The Attorneys At Weisberg & Meyers Provides Support For The Hourly Rates Requested.**

Plaintiffs attorneys' experience is summarized in the attorney profiles, attached hereto as Exhibit "H," and further supported by the affidavits of Weisberg & Meyers attorneys, contained within Group Exhibit "I."

**B.   The Rates Sought By Weisberg & Meyers Are Reasonable Compared With The 2007 Consumer Law Attorney Fee Survey Of Prevailing Market Rates.**

In the fall of 2007, a survey was conducted of consumer advocates across the country to determine the rates charged by attorneys practicing in the area of consumer protection, grouped by "attorney's years in practice, location of practice, and size of firm." (*See* 2007 Consumer Law Attorney Fee Survey, attached hereto as Exhibit "J"). Page 7 of the attached survey shows that the average billing rate for firms with more than 5 attorneys in the Western Region is $275 per hour. The rates sought by Plaintiff's attorneys are in line with prevailing market rates in the area.

**C.   The Rates Sought By Weisberg & Meyers Are Reasonable Compared with   The United States Attorney's Office's "Laffey Matrix."**

The attorney's fees rates requested by Plaintiff through Plaintiff's attorney's Statement of Services are commensurate with the prevailing rates for attorneys that practice federal law. This case was filed pursuant to a federal remedial statute, the FDCPA, so it is fitting to compare rates charged by other attorneys practicing federal law to determine an appropriate rate. *See Laffey v. Northwest Airlines, Inc*., 572 F. Supp. 354, 371 (D.D.C. 1983) (wherein the court compared the rates of attorneys practicing under federal claims with fee-shifting provisions to reach a hybrid rate).

The United States Attorney's Office, Civil Division, took the *Laffey* court's analysis one step further, creating the "Laffey Matrix" to reflect how inflation has changed billing rates over the years. The "Laffey Matrix" clearly demonstrates that the rates sought by Plaintiff's attorneys herein are reasonable compared to recognized rates for attorneys' with similar experience. The "Laffey Matrix" is incorporated into this Fee Petition in its entirety:[5]

---

[5] This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia. The matrix is intended to be used in cases in which a "fee-shifting" statute permits the prevailing party to recover "reasonable" attorney's fees. See, e.g., 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412 (b) (Equal Access to Justice Act). The matrix does not apply in cases in which the hourly rate is limited by statute. See 28 U.S.C. § 2412(d).

This matrix is based on the hourly rates allowed by the District Court in *Laffey v. Northwest Airlines, Inc.,* 572 F. Supp. 354 (D.D.C. 1983), aff'd in part, rev'd in part on other grounds, 746 F.2d 4 (D.C. Cir. 1984), cert. denied, 472 U.S. 1021 (1985). It is commonly referred to by attorneys and federal judges in the District of Columbia as the "Laffey Matrix" or the "United States Attorney's Office Matrix." The column headed "Experience" refers to the years following the attorney's graduation from law school. The various "brackets" are intended to correspond to "junior associates" (1-3 years after law school graduation), "senior associates" (4-7 years), "experienced federal court litigators" (8-10 and 11-19 years), and "very experienced federal court litigators" (20 years or more). *See Laffey*, 572 F. Supp. at 371.

The hourly rates approved by the District Court in *Laffey* were for work done principally in 1981-82. The Matrix begins with those rates. *See Laffey*, 572 F. Supp. at 371 (attorney rates) & 386 n.74 (paralegal and law clerk rate). The rates for subsequent yearly periods were determined by adding the change in the cost of living for the Washington, D.C. area to the applicable rate for the prior year, and then rounding to the nearest multiple of $5 (up if within $3 of the next multiple of $5). The result is subject to adjustment if appropriate to ensure that the relationship between the highest rate and the lower rates remains reasonably constant. Changes in the cost of living are measured by the Consumer Price Index for All Urban Consumers (CPI-U) for Washington-Baltimore, DC-MD-VA-WV, as announced by the Bureau of Labor Statistics for May of each year.

**Civil Division**

**LAFFEY MATRIX 2003-2010**

Years (Rate for June 1 - May 31, based on prior year's CPI-U)

| Experience | 03-04 | 04-05 | 05-06 | 06-07 | 07-08 | 08-09 | 09-10 |
|---|---|---|---|---|---|---|---|
| 20+ years | 380 | 390 | 405 | 425 | 440 | 465 | 465 |
| 11-19 years | 335 | 345 | 360 | 375 | 390 | 410 | 410 |
| 8-10 years | 270 | 280 | 290 | 305 | 315 | 330 | 330 |
| 4-7 years | 220 | 225 | 235 | 245 | 255 | 270 | 270 |
| 1-3 years | 180 | 185 | 195 | 205 | 215 | 225 | 225 |
| Paralegals & Law Clerks | 105 | 110 | 115 | 120 | 125 | 130 | 130 |

Based on the reasonable market rates in the "Laffey Matrix," the attached affidavits and attorney profiles, and other authority provided to this Court in Plaintiff's Petition for Attorneys' Fees, the hourly rates sought by Plaintiff's attorneys are reasonable and should be awarded in full.

**D.   The Affidavits Of Numerous Consumer Protection Attorneys Provide Support For The Hourly Rates And Time Requested By Plaintiff.**

Use of an updated Laffey Matrix was implicitly endorsed by the Court of Appeals in *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc). The Court of Appeals subsequently stated that parties may rely on the updated Laffey Matrix prepared by the United States Attorney's Office as evidence of prevailing market rates for litigation counsel in the Washington, D.C. area. *See Covington v. District of Columbia*, 57 F.3d 1101, 1105 & n. 14, 1109 (D.C. Cir. 1995), cert. denied, 516 U.S. 1115 (1996). Lower federal courts in the District of Columbia have used this updated Laffey Matrix when determining whether fee awards under fee-shifting statutes are reasonable. *See, e.g., Blackman v. District of Columbia*, 59 F. Supp. 2d 37, 43 (D.D.C. 1999); *Jefferson v. Milvets System Technology, Inc.*, 986 F. Supp. 6, 11 (D.D.C. 1997).

Numerous consumer protection attorneys familiar with the claims as brought herein have reviewed the hourly rates and time entries of Plaintiff's attorneys. These attorneys have each attested that the rates and time incurred by Plaintiff's attorney are reasonable. (*See* Combined Affidavits of Consumer Advocates, attached hereto as Exhibit "K"). These consumer protection attorneys have a wealth of experience in trial and appellate advocacy, and have displayed this expertise within the legal community by teaching continuing legal education courses and seminars, and by publishing articles in various legal journals. These advocates have cumulatively represented thousands of consumers throughout the nation and have handled numerous consumer actions including claims brought pursuant to the FDCPA. Therefore, based on the experience of these attorneys in the area of consumer protection litigation, it is clear that they have obtained the experience and qualifications necessary to present their opinions to this Court as to the reasonableness of Plaintiff's attorneys' fees.

### E. It Is Defendant's Burden to Present Evidence Contesting Plaintiff's Attorneys' Reasonable Rates.

"A party advocating the reduction of the lodestar amount bears the burden of establishing that a reduction is justified." *United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir. 1989), cert. denied, 493 U.S. 1071 (1990) (awarding $5,500,000 in fees on $3 recovery), cited in *Grant v. Martinez*, 973 F.2d 96 (2d Cir. 1992. The burden of proof is on the opponent to present specific evidence that a lower amount is appropriate. *See e.g*, *United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir. 1989); *Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir.

1992) (fee opponent must submit evidence).  "[T]here is ordinarily no reason for a court to disregard uncontested affidavits of a fee applicant." *Brinker v. Giuffrida*, 798 F.2d 661 (3d Cir. 1986).

## VII. PLAINTIFF REQUESTS REIMBURSEMENT FOR COSTS EXPENDED.

Plaintiff seeks $425.00 in litigation costs incurred in relation to this matter. (*See* Bill of Costs, filed separately, Document 15).

WHEREFORE, Plaintiff respectfully requests that this Court enter an order awarding Plaintiff, and his counsel, attorneys' fees in the amount of $4,694.50 and costs in the amount of $425.00.

Respectfully submitted this 21st day of July, 2010.

By: s/ Marshall Meyers
Marshall Meyers (020584)
WEISBERG & MEYERS, LLC
5025 North Central Ave., #602
Phoenix, AZ 85012
602 445 9819
866 565 1327 facsimile
mmeyers@AttorneysForConsumers.com
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2010, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following: Pat Esquivel, JEROLD KAPLAN LAW OFFICE, P.C., pesquivel@kdelaw.com, Attorneys for Defendant Merchants & Medical Credit, Corporation, Inc.

By: s/ Marshall Meyers
Marshall Meyers (020584)
WEISBERG & MEYERS, LLC
Attorney for Plaintiff